**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

GARY L. MEYER,                                )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )        NO. 2:06-CV-124 PPS
                                             )
THE SCHOOL TOWN OF HIGHLAND,                 )
INDIANA,                                     )
                                             )
                    Defendant.               )

**MEMORANDUM OPINION AND ORDER**

In 2005, the School Town of Highland ("STH") needed a basketball coach because their prior coach had resigned. STH advertised that it had the position of "Varsity Basketball Coach" open, and that STH was accepting applications. Plaintiff Gary L. Meyer has been a successful high school basketball coach and has taught social studies for over thirty years. Meyer, then 58 years old, applied for the job. After interviewing for the position, and participating in a series of discussions with the Athletic Director and a member of the Board of School Trustees, Meyer was not selected for the position. Instead, a 28 year old applicant was named to be STH's head coach. Meyer alleges that STH discriminated against him on the basis of age.

This matter is before the Court on STH's Motion for Summary Judgment [DE14] and Meyer's Local Rule 56.1(D) Motion Regarding Admissibility of Evidence [DE20]. Because at least two of the statements at issue in Meyer's Motion are not barred by the hearsay rule, his Motion [DE20] is **GRANTED IN PART.** And because the Court finds there are questions of material fact surrounding the circumstances of STH's decision not to hire Meyer, STH's Motion

1

for Summary Judgment [DE14] is **DENIED**.

## FACTUAL BACKGROUND

Throughout his career, Meyer has been a successful high school basketball coach in both Indiana and Illinois.[1]  Meyer has amassed 460 wins and has been named to the Illinois Basketball Coaches Association Hall of Fame.  At the time of this application, Meyer was employed as the Varsity Basketball Coach and Athletic Director at Gavit High School in Hammond, Indiana.  In addition, he held an Indiana Teacher's License that certified him to teach both social studies and driver and traffic safety.

In April 2005, after its prior basketball coach resigned, STH gave public notice that it was seeking a new head coach for the boys varsity basketball team at Highland High School. The announcement stated that STH was accepting applications for the following vacancies: High School Math Teacher; Varsity Basketball Coach; and Elementary Basketball Coordinator. It is clear from the announcement that these were three separate vacancies.  Around the same time, STH's Athletic Director, Dan Candiano, personally invited Meyer to apply for the position. (Meyer Dep. at 41-47.)  Candiano did so even though Meyer told him he was only licensed to teach social studies and driver education.  (*Id*. at 46.)  According to Candiano, this wasn't a problem because there was a possibility of making Meyer an assistant athletic director. (Candiano Dep. at 26.)  In addition, a social studies position was possibly opening up in one of STH's middle schools. (Meyer Dep. at 46.)

STH narrowed its focus to three candidates:  Meyer, Derek Sheridan, and Edward Fierek.

---

[1]Because Meyer is the non-moving party, we construe all facts and make all reasonable inferences in the light most favorable to him.  *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489 n. 1 (7th Cir. 2007).

Sheridan, then the coach at a high school in Ohio, had preceded Meyer as the coach at Gavit High.  Fierek, then 28, was the head coach for Bishop Noll Institute in Hammond and was also a PE and health teacher.  At the time, Fierek had three years of head coaching experience and had a record of 34 wins and 35 losses.

Two groups were critical to the selection process.  The first group was an interview committee comprised of Candiano, Renner Ventling (STH's Superintendent), Ken Winston (a Middle School Principal for STH), Ronald Blake (STH's Director of Curriculum), James Conway (the Highland High School Principal), and Ryan Harrington (STH's Swim Coach).  That committee interviewed the top candidates and assisted Ventling in making his recommendation to the second group, the Board of School Trustees.  At the time, the Board of School Trustees consisted of Rick Volbrecht, Melanie Nowak, Dave Turoci, and Carol Green-Fraley.

Throughout much of this process, Meyer received insight and assistance from Candiano, who Meyer claims informed him about the committee's thoughts and concerns regarding the search.  According to Meyer, well before his interview with the committee, he met with Candiano at a restaurant and they discussed the process.  At that meeting, Candiano told Meyer that he thought it was important for Meyer to convey to the committee that he intended to coach and teach at STH for a number of years.  (Meyer Dep. at 66-67.)  In addition, throughout the process, Candiano had multiple discussions with Meyer in which Candiano offered suggestions of ways (positions he could fill, etc.) to bring Meyer to STH.  (*See, e.g.*, *id*. at 42-45.)

Meyer interviewed with the committee on May 31.  As he was being called into the interview room, Candiano again stressed to Meyer that he should tell the committee that he

3

intended to stay for several years, (Meyer Dep. at 88-89) because "there was some concern that [Meyer] wasn't going to stay," (Candiano Dep. at 38).   Aside from a question from Blake regarding Meyer's ability to obtain an Emergency Permit to teach PE or health, the interview focused almost entirely on basketball.  (Meyer Dep. at 76-79.)  During his interview Meyer commented that Sheridan had been fired from his position as head basketball coach at Gavit, (*see, e.g.*, Ventling Dep. at 34-36) a fact Meyer apparently discovered while reading an old letter he found on his computer at Gavit, (Meyer Dep. at 81).  Although apparently not true, (Ventling Dep. at 35) Ventling was "absolutely appalled" by the comment, (*id*. at 34) which he considered "extremely unethical and unprofessional," (*id*. at 35).  When Ventling discovered that the comment was inaccurate, he "wouldn't have recommended Mr. Meyer if he would have been Bobby Knight."  (*Id*.)  At the interview, none of the interviewers mentioned Meyer's age or how long he intended to coach.  (*Id*. at 87.)

After Meyer's interview, the committee compared Meyer and Fierek.  At least one of the committee members recalls that the committee was concerned that Meyer might not be at STH for very long; whereas Fierek "was beginning his career and he might be there for 10, 15 years." (Candiano Dep. at 52.)  On the other hand, Blake recalled that one committee member thought that, at 28, Fierek was too young to be a head coach.  (Blake Dep. I at 59.)

On June 2, Candiano approached Meyer and asked Meyer to meet with him and Board member Volbrecht to discuss the position.  (Meyer Dep. at 96.)  At that meeting, Volbrecht discussed a variety of possibilities for bringing Meyer into STH as the basketball coach, (*see id*. at 99-106) including "holding back" two social studies sections, which Meyer would be able to teach, (*id*. at 100).  Essentially, Volbrecht was "trying to piece together a situation[] where if the

4

social studies position didn't open up, that it was still very doable for [Meyer] to be hired there by taking from here and here and here and piecing it together." (*Id.* at 103.)

After the June 2 meeting, Volbrecht continued to contact Meyer to discuss various ways to bring him to STH. (*Id.* at 113-14.) During one of those calls, Volbrecht finally broke the news to Meyer that "there was not going to be enough votes for [Meyer] to be the basketball coach at Highland." (*Id.* at 129.) Volbrecht then told Meyer about a series of comments from members of the interview committee, the Board, and STH's attorney suggesting that Meyer was not selected because of his age. (*Id.* at 116-118.) Specifically, Meyers claims that Volbrecht told him that at a closed session of the Board of Trustees on May 10:

- Board member Turoci stated that he wanted to hire a younger coach (*id.* at 117; 121);

- STH's counsel, Joseph Curosh, made a comment about hiring a younger coach (*id.* at 117; 121-22); and

- Ventling commented that Meyer must be at least 60 years old (*id.* at 117-18; 121-22).

While the record is not entirely clear, it also appears that Volbrecht may have told Meyer that Ventling also made similar comments on May 11 at a meeting between Volbrecht, Ventling, and Candiano. (*See* Meyer Dep. at 122.) In addition, at the May 10 meeting Ventling told the Board that he did not "consider Meyer to be a long-term candidate." (Turoci Dep. at 15.) During Meyer's conversation with Volbrecht, Volbrecht told Meyer that he thought the decision not to hire Meyer was "a classic case of age discrimination." (*Id.* at 123.)

Despite the fact that the process was not complete, on June 6 Fierek was offered the position as head coach. Fierek immediately accepted, and on June 16 informed Bishop Noll Institute of his resignation. On June 14, Ventling recommended Fierek to the Board to be the head basketball coach. The Board tabled the issue, in part to consider the possibility of hiring

5

Meyer as the head coach and Fierek as an assistant.  (*See* Turoci Dep. at 16-17.)  Shortly thereafter, Blake asked Fierek if he would be willing to accept such an arrangement, (Fierek Dep. at 24) which he was not.

On June 22, the Board reconvened.  Although Ventling said that Fierek and Meyer were "two pretty equally qualified candidates," (Nowak Dep. at 10) he again recommended Fierek.  The Board accepted Ventling's recommendation.  Meyer was sent a letter on July 12 informing him that although he was a "well-qualified candidate," he was not selected for the position and that his application would be kept on file for possible future positions.

**DISCUSSION**

As noted above, STH has moved for summary judgment and Meyer has moved for an order regarding the admissibility of the statements Volbrecht made to Meyer relaying comments made by STH officials about Meyer's age.  STH objects to the admission of those statements, asserting that they are inadmissible hearsay.  Because the alleged comments impact the analysis with respect to the motion for summary judgment, I will turn to the evidentiary issues first.

**I.      ADMISSIBILITY OF STATEMENTS REGARDING MEYER'S AGE**

Meyer seeks the admission of several statements Volbrecht made to Meyer, including those regarding comments made by other STH officials.  Specifically, the Motion concerns:

6

1.  Volbrecht's comment to Meyer that at a closed session of the Board of Trustees on May 10 Turoci stated that he wanted to hire a younger coach, (Meyer Dep. at 117; 121);

2.  Volbrecht's comment to Meyer that at a closed session of the Board of Trustees on May 10 Curosh made a comment about hiring a younger coach at another school, (*id*. at 117, 121-22);

3.  Volbrecht's comment to Meyer that at a closed session of the Board of Trustees on and/or around May 10 Ventling commented that Meyer must be at least 60 years old, (*id*. at 117-18; 121-22); and

4.  Volbrecht's statement to Meyer that Volbrecht thought the selection of Fierek over Meyer was "a classic case of age discrimination," (*id*. at 123).

STH asserts that these statements are inadmissible hearsay.  (*See* Def.'s Br. in Supp. of its Mot. for Sum. J. [DE15] ("Brief") at 14-15.)  Meyer contends that the first and fourth comments are admissible under Federal Rule of Evidence 801(d)(2)(D).  (*See* Pl.'s Br. in Supp. of N.D. Ind. L.R. 56.1(D) Mot. Regarding Admissibility of Evid. [DE21] at 1-2.)  Meyer also contends that all of the statements are admissible as statements to show the STH officials' state of mind under Federal Rule of Evidence 803(3).  (*Id*. at 5.)

Federal Rule of Evidence 802 generally prohibits the admission of hearsay.  Hearsay is an out of court statement that is offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801©.  But "a statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ."  Fed. R. Evid. 801(d)(2)(D).  "To fall within Rule 801(d)(2)(D) a statement must be about a matter within the subject matter of the agency" and in the context of employment discrimination cases, "the declarant must be involved in the decision making process affecting the employment action

7

involved." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 630 (7th Cir. 2006) (quotation marks and citations omitted). *See also Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 (7th Cir. 2003). In particular, "when the decision makers themselves, or those who provide input into the decision, express [certain] feelings (1) around the time of, and (2) in reference to, the adverse employment action complained of," their admission is allowed because "it may be possible to infer that the decision makers were influenced by those feelings in making their decision." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652-53 (7th Cir. 2000). *See also Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998).

Statements one and three are not barred by the hearsay rule. As an initial matter, there are two sets of statements here: Volbrecht's statements to Meyer and the STH officials' comments that Volbrecht was relating to Meyer. The entirety of these statements are admissible only "if each part of the combined statements conforms with an exception to the hearsay rule," Fed. R. Evid. 805; *see also Halloway v. Milwaukee County*, 180 F.3d 820, 825 n. 3 (7th Cir. 1999). Because Volbrecht was a member of the Board of Trustees – the entity that was ultimately responsible for the hiring at issue – his statements to Meyer about the hiring process are not hearsay under Rule 801(d)(2)(D). These statements meet the particular requirements for admissions in employment cases because they were both around the time of, and in reference to, the decision to hire Fierek rather than Meyer. *See Hunt*, 219 F.3d at 652-53. Thus, Volbrecht's statements to Meyer are not hearsay.

Similarly, two statements relayed to Meyer by Volbrecht – Turoci's comment that he wanted to hire a younger coach and Ventling's comment that Meyer must be sixty – are not barred by the hearsay rule. First, both Turoci and Ventling are STH agents with respect to the

hiring decision and thus their statements are not hearsay.  Fed. R. Evid. 801(d)(2)(D).  Moreover,

Ventling's comment that Meyer must be "at least 60 years old" is not being offered to prove the

truth of the matter asserted but instead to show Ventling's state of mind when he was evaluating

Meyer's application.  *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004).  In sum,

statements 1 and 3 listed above are admissible evidence.[2]

## II.      STH'S MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56©.  The party seeking summary judgment carries the initial

burden of demonstrating an absence of evidence to support the position of the non-moving party.

*Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  The non-moving party

must then set forth specific facts showing that there is a genuine issue of material fact and that

the moving party is not entitled to a judgment as a matter of law.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252 (1986).

The ADEA precludes employers from failing or refusing to hire "any individual . . .

because of such individual's age."  29 U.S.C. § 623(a)(1).  In an ADEA case, the plaintiff must

show that his age "actually motivated" the adverse decision.  *Hemsworth*, 476 F.3d at 490

(quotation marks and brackets omitted).  *See also Schuster v. Lucent Techs., Inc.*, 327 F.3d 569,

573-74 (7th Cir. 2003).  The plaintiff can do so through either the direct or indirect methods of

---

[2]Because statements one and three are sufficient for this Order, the Court defers decision
as to the second and fourth statements.

proof. *Hemsworth*, 476 F.3d at 490. Under the direct method, a plaintiff can present both admissions and circumstantial evidence to meet his burden. *Id*. While isolated statements from the employer that amount to "stray remarks" are insufficient, a statement made "(1) by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action," can provide the necessary inference of discrimination. *Id*. at 491. Furthermore, a plaintiff can also prevail by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)).

The types of circumstantial evidence that could lead to a convincing mosaic of intentional discrimination include: (1) suspicious timing, ambiguous statements, and behavior toward or comments directed at other employees in the protected group; (2) evidence that employees similarly situated to the plaintiff but outside the protected class received systematically better treatment; or (3) evidence that the plaintiff was qualified for a job in question, but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Troupe*, 20 F.3d at 736. *See also Hemsworth*, 476 F.3d at 491. Each type of circumstantial evidence can be used on its own or in conjunction with the other types of circumstantial evidence to establish discrimination. *Troupe*, 20 F.3d at 736.

STH claims that its decision to hire Fierek over Meyer was not motivated by Meyer's age. STH contends, first, that Meyer did not even qualify for the position because he was not licensed to teach any of the classes for which they had vacancies. (Brief at 20-24.) But this is a

10

curious suggestion.  After all, if that were the reason, why would STH have interviewed Meyer in the first place since STH knew the subjects Meyer was qualified to teach.  STH also contends that, even if Meyer were otherwise qualified to be recommended to the Board, Ventling – who had the sole discretion to make the recommendation – would not do so because, based on Meyer's comments about Sheridan in the interview, Ventling thought that Meyer was ethically unsuitable for the position.  (*Id*. at 21.)

Despite STH's arguments regarding Meyer's qualifications, Meyer has presented sufficient evidence to allow a reasonable jury to find he has satisfied the direct method of proving his claim. The Volbrecht's statements to Meyer regarding Turoci's comments may provide a jury with a direct admission that STH's decision was motivated by Meyer's age.  A reasonable jury could find that Turoci's comment was made by a decision maker around the time of the decision and in reference to it and demonstrated that the decision was motivated by Meyer's age.  *See Hemsworth*, 476 F.3d at 491.

Alternatively, a reasonable jury could construct a convincing mosaic from Turoci's statement as well as several other facts, including but not limited to:  (1) Ventling's statement indicating that Meyer's age may have motivated STH's decision to hire Fierek rather than Meyer; (2) Meyer's repeated conversations with Candiano stressing that it was important for the interview committee to believe that Meyer would remain at STH for several years; (3) Meyer's repeated conversations with Candiano and Volbrecht offering ways to "piece together" a way for Meyer to take the head coach position, suggesting that Meyer met the necessary qualifications to be hired but that some other consideration motivated the decision; (4) the inquiry into whether Fierek might accept the assistant coaching position, suggesting a similar conclusion; and (5) the

11

statements from the interview committee regarding their concern with finding a "long-term candidate," which could be seen as a proxy for finding a young candidate.  If believed, these facts provide a reasonable jury with a sufficient basis to construct a "convincing mosaic" of circumstantial evidence that would allow the jury to infer intentional discrimination by STH. *See Rhodes*, 359 F.3d at 504.

These facts, taken together, leave the Court with significant questions of material fact which preclude summary judgment on Meyer's age discrimination claim.  These questions include, but are not limited to:

1.    Whether Volbrecht actually made the alleged statements to Meyer?

2.    If he did, whether the STH officials actually made the comments Volbrecht told Meyer they made?

3.    If the STH officials made those comments, whether they and other STH actions demonstrate that STH's decision to hire Fierek rather than Meyer was "motivated" by Meyer's age?

## CONCLUSION

For the foregoing reasons, Plaintiff Gary Meyer's Local Rule 56.1(D) Motion Regarding Admissibility of Evidence [DE20] is **GRANTED IN PART.**  Defendant School Town of Highland, Indiana's Motion for Summary Judgment [DE14] is **DENIED**.  This case remains set for final pretrial conference on October 24, 2007.

**SO ORDERED.**

ENTERED: October 9, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT